Michael McShane (CA State Bar #127944)
mmcshane@audetlaw.com
Jonas P. Mann (CA State Bar #263314)
jmann@audetlaw.com
AUDET & PARTNERS, LLP
711 Van Ness Avenue, Suite 500
San Francisco, CA  94102
Telephone: (415) 568-2555

**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| IVY HUFF, JOHN GOLDEN, LATAYQA LITTLE, JACKIE BROWN, MNEMOSYNE COLLIER, STEPHANIE WALTON, AKIL PATTERSON, and WILLIAM TOWNSEND, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNIRUSH, LLC d/b/a UNIRUSH FINANCIAL SERVICES; RUSH COMMUNICATIONS, LLC; RUSH COMMUNICATIONS OF NYC, INC.; METABANK; META FINANCIAL GROUP, INC.; and MASTERCARD INC.<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiffs file this Class Action Complaint on behalf of themselves and all other similarly situated, by and through their undersigned attorneys against Defendants UniRush, LLC, Rush Communications, Rush Communications of NYC, Inc. LLC, MetaBank, Meta Financial Group, Inc., and MasterCard Inc. (Collectively "Defendants"). Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief based upon, *inter alia*, the investigation conducted by their attorneys.

**NATURE OF THE CASE**

1.      Plaintiffs bring this class action individually and on behalf of the Class and Sub-Classes defined below against Defendants to obtain relief, including among other things, damages and declaratory relief. This class action is brought to remedy violations of law in connection with Defendants' fraudulent and deceptive business practices. Defendants represent to consumers that by enrolling with their RushCard prepaid debit card services, consumers will enjoy a safe and reliable way to manage their money. However, RushCard accounts are not safe and protected as promised by Defendants, and Defendants have unlawfully converted Plaintiffs' and Class members' monies while imposing monthly fees on consumers for their RushCard services.

2.      As a result of Defendants' deceptive practices, RushCard customers across the nation have been unlawfully denied access to their funds and are unable to pay bills or even purchase groceries and everyday necessities, which has caused damage to Plaintiffs and Class members in substantial amounts which cannot be presently determined.

**JURISDICATION AND VENUE**

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiffs and Defendants are of diverse citizenship and the aggregate amount in controversy exceeds $75,000, exclusive of interest and costs; and pursuant to 28. U.S.C. §1332(d)(2), because the Plaintiffs and the vast majority of the members of the Class are of diverse citizenship from Defendants and the aggregate amount in controversy

1    exceeds $5,000,000, exclusive of interest and costs.  There are at least 10,000 or more members

2    of the Class.

3         4.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial

4    part of the events or omissions giving rise to Plaintiffs' claims occurred here, a substantial part of

5    the property that is the subject of this action is situated in this District, and Defendants are each

6    subject to personal jurisdiction in this District.

7                                          **PARTIES**

8         5.       Plaintiff Ivy Huff is a citizen of California residing in Redding, Shasta County,

9    California. On October 12, 2015 Plaintiff Huff deposited $195 onto her RushCard, and was

10   unable to access her funds for eight days. As a result of Defendants' denying Plaintiff Huff

11   access to her funds, Plaintiff Huff was unable to pay her car payment which has now incurred a

12   $40 dollar late fee. Plaintiff Huff contacted RushCard customer service and was put on hold for

13   over two hours before customer service eventually disconnected the call without speaking to

14   Plaintiff Huff.

15        6.       Plaintiff John Golden is a citizen of Virginia residing in Arlington, Virginia.

16   Plaintiff Golden is a RushCard account holder that was denied access to his RushCard account

17   starting on or around October 12, 2015. As a result of Defendants' denying Plaintiff Golden

18   access to his funds, Plaintiff Golden could not afford to purchase groceries or toilet paper and

19   was forced go to a food pantry. Once Plaintiff Golden's RushCard was reactivated there was $25

20   dollars missing from his account that RushCard has yet to return.

21        7.       Plaintiff LaTayqa Little is a citizen of Virginia residing in Richmond, Virginia.

22   Plaintiff Little is a RushCard account holder that was denied access to her funds starting on or

23   around October 12, 2015. During that time, Defendants also delayed Plaintiff Little's direct

24   deposit. As a result, she was unable to meet her financial obligations or pay her bills on time.

25        8.       Plaintiff Jackie Brown is a citizen of Texas residing in Houston, Harris County,

26   Texas. Plaintiff Brown purchased his RushCard over the phone after viewing a RushCard

27   advertisement on television. As a result of Defendants' actions, Plaintiff Brown received his

28   direct deposit approximately three days late on October 14, 2015.  Plaintiff Brown' was also

AUDET & PARTNERS LLP

A&P

intermittently unable to access his funds. His RushCard has now been reactivated but he is still missing funds from his account in connection with an incorrect charge of $41.07 from October 9, 2015, as well as an $80.00 payment that was refunded to his RushCard account on October 14, 2015 but still has not been made available to him.

9.      Plaintiff Mnemosyne Collier is a citizen of Pennsylvania residing in Landsdowne, Delaware County, Pennsylvania. Plaintiff Collier is a RushCard account holder who was denied access to her account starting in or around October 12, 2015 which remained locked for 12 days. As a result of Defendants' denying Plaintiff Collier access to her funds, she was unable to afford childcare or gas for her car or transportation to her place of employment, which nearly resulted in her termination. Once Plaintiff Collier's RushCard was reactivated there was approximately $50 dollars missing from her account that RushCard has yet to return.

10.      Plaintiff Stephanie Walton is a citizen of Illinois residing in Chicago, Illinois. Plaintiff Walton is a RushCard account holder who was denied access to her account funds for 4 days. Plaintiff Walton's account also wrongfully displayed a zero balance. As a result, she was unable to meet her financial obligations, including purchasing gas for her vehicle, and had to borrow money from a co-worker to exit a parking lot.

11.      Plaintiff Akil Patterson is a citizen of Maryland residing in Baltimore, Maryland. Plaintiff Patterson is a RushCard account holder who was denied access to his account funds starting on October 7, 2015. His account was temporarily reactivated for ATM transactions only, and he is now without any access to his funds.

12.      Plaintiff William Townsend is a citizen of North Carolina residing in Fayetteville, North Carolina. To date, he has not received a direct deposit payment from his employer that should have posted on or about October 12, 2015. As a result, he was unable to purchase gas for his car to drive to work or pay his electricity bill. He made numerous attempts to resolve this issue with RushCard employees but was told to call out sick or take a cab to work. His request that RushCard refuse his employer's direct deposit so that his employer could provide him with a check was also denied.

13.     Defendant UniRush, LLC, d/b/a UniRush Financial Services ("Unirush") is a Delaware limited liability company with its principal place of business at 10625 Techwoods Circle, Cincinnati, Ohio. UniRush provides prepaid Visa debit cards in the United States. Its prepaid debit cards are used to deposit money, withdraw cash, make purchases, shop online, and pay bills.

14.     Defendant Rush Communications, LLC, is a New York limited liability company with its principal place of business located at 512 Seventh Avenue, 43rd Floor, New York, NY.

15.     Defendant Rush Communications of NYC, Inc. is a New York corporations with its principal place of business located at 512 Seventh Avenue, 43rd Floor, New York, NY.

16.     Defendants Rush Communications, LLC, and Rush Communications of NYC, Inc. are controlled by Russell Simmons and, upon information and belief, are agents and/or principals of each other. Rush Communications, LLC is the holding company for UniRush.

17.     Defendant MetaBank is a federally charted savings bank with its principal place of business in Storm Lake, Iowa. MetaBank issues the prepaid RushCards.

18.     Defendant Meta Financial Group, Inc. is a Delaware corporation with its principal place of business located at 5501 South Broadband Lane, Sioux Falls, South Dakota. Meta Financial Group, Inc. is the holding company for MetaBank.

19.     Defendant MasterCard Inc. is a company with its principal place of business located at 2000 Purchase Street, Purchase, NY. MasterCard Inc. provides transaction processing and other payment-related products and services in the United States and internationally. MasterCard's Integrated Processing Solutions unit was used to upgrade the RushCard on October 12, 2015.

## **RUSHCARD ARBITRATION CLAUSE**

20.     The RushCard Cardholder Agreement contains a purported requirement that certain claims be individually arbitrated. This clause is unenforceable because it is substantively and procedurally unconscionable and against public policy.

21.     To the extent Defendants assert that Plaintiffs' and Class members' claims are subject to an arbitration agreement or a class action waiver, Plaintiffs and the Class seek

1  declaratory relief in the form of finding that the arbitration agreement is inapplicable and

2  unenforceable.

3      22.    Plaintiffs and Class members were fraudulently induced into enrolling with

4  RushCard services based on Defendants' false and fraudulent promises that customers' funds

5  were safe and protected and readily available for use similar to a traditional bank card.

6      23.    The terms of RushCard's arbitration provision, waiver of class action rights and

7  right to trial by jury are unconscionable and Plaintiffs and Class members would not have

8  consented to those terms or utilized RushCard services had they known they would unlawfully

9  be denied access to their funds.

10  **FACTUAL BACKGROUND**

11  **RushCard Overview**

12      24.    In 2003, Defendants introduced to consumers a prepaid Visa debit card known as

13  the RushCard, which was created and endorsed by hip-hop and business mogul Russell

14  Simmons.

15      25.    The RushCard, which is an alternative to traditional bank cards, allows consumers

16  with poor credit to obtain accounts and Visa prepaid debit cards, without a credit check. The

17  RushCard also purports to assist consumers with rebuilding credit scores.

18      26.    As Russel Simmons, explained "The RushCard is the embodiment of my message

19  of empowerment because it is a better and more transparent option for millions of under-banked

20  and unbanked Americans who often suffer at the hands of large financial institutions."[1]

21      27.    RushCard charges monthly fees depending on the type of account a customer

22  obtains.

23      28.    On its website Defendants market the RushCard as "safe and protected" available

24  for use "everywhere Visa debit cards are accepted" and that it will provide consumers with the

25  ability to "gain control of [their] finances."[2]

26

27      [1] http://abcnews.go.com/blogs/business/2011/10/russell-simmons-RushCard-gets-cool-reception-

28  from-wall-st-protesters/. (Last visited October 28, 2015).
    [2] https://www.RushCard.com/ (Last visited October 28, 2015).

29.     However, unlike traditional brick and mortar banks where, if a consumer has problems with their account, they can easily go to their bank where they will have access to their money and the ability to quickly and efficiently repair their account, the RushCard provides no such protection.

30.     Despite Defendants advertisements and promises to consumers, its business model lacks consumer protection if there is a billing mistake or fraudulent charges, as evidenced by Plaintiffs and Class members being denied access to their funds in October 2015.

**Problems with RushCard**

31.     On October 11, 2015 RushCard informed its customers that it would be upgrading its system to a new processing partner, MasterCard's Integrated Processing Solutions, which would interrupt account services for only 5 hours. This upgrade was to take place from 3 – 8 a.m. EDT on October 12, 2015.

32.     However, the upgrade caused thousands of RushCard accounts to wrongfully display zero balances and locked customers out of their accounts for over a week. As of today, October 29, 2015, some customers still do not have access to their accounts or funds, and have vented their frustrations on social media outlets:

"I have called @RushCard 51 times today. Hung up on 34 times. Dead Air 12 times. And the representatives all say call back in 2 to 3 hours."[3]

"Man in hospital from heart problems because wife could not buy heart medication due to #RushCard THEFT. It's no longer a glitch. @UncleRUSH"

"8th day no money and pay day again awesome another weeks check gone #RushCard @UncleRUSH"[4]

---

[3] https://twitter.com/Xenafan4ever/status/653995291817967616?ref_src=twsrc%5Etfw
[4] https://twitter.com/hashtag/RushCard

33.     Furthermore, RushCard customers were unable to reach customer service to fix their account problems. Many have complained of being on hold for hours, or the call getting disconnected by an automated agent.

34.     RushCard users have suffered greatly without access to their funds. Customers across the nation are unable to pay their rent, purchase food, medications, and everyday necessities.

35.     Plaintiffs, as well as Class members have sustained economic injury and damages as a result of Defendant's wrongful conduct.

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring this suit as a class action on behalf of themselves and all other similarly situated RushCard customers (the "Class") pursuant to Fed. R. Civ. P. 23. Plaintiffs seek to represent the following Class and Sub-Classes:

a.     All persons in the United States who were RushCard customers and were denied access to their accounts and funds from October 12, 2015 to the present. Excluded from the Class and Subclasses are any Judge or Magistrate presiding over this or any related action and members of their families; all persons who properly execute and file a timely request for exclusion from the Class ("the Class");

b.     All persons in the United States who purchased a RushCard over the phone, and were denied access to their accounts and funds from October 12, 2015 to the present ("Phone Purchase Sub-Class");

c.     All persons in California who were RushCard customers and were denied access to their accounts and funds from October 12, 2015 to the present ("California Sub-Class");

d.     All persons in Virginia who were RushCard customers and were denied access to their accounts and funds from October 12, 2015 to the present ("Virginia Sub-Class");

e.     All persons in Texas who were RushCard customers and were denied access to their accounts and funds from October 12, 2015 to the present ("Texas Sub-Class");

f. All persons in Pennsylvania who were RushCard customers and were denied access to their accounts and funds from October 12, 2015 to the present ("Pennsylvania Sub-Class");

g. All persons in Illinois who were RushCard customers and were denied access to their accounts and funds from October 12, 2015 to the present ("Illinois Sub-Class");

h. All persons in Maryland who were RushCard customers and were denied access to their accounts and funds from October 12, 2015 to the present ("Maryland Sub-Class"); and

i. All persons in North Carolina who were RushCard customers and were denied access to their accounts and funds from October 12, 2015 to the present ("North Carolina Sub-Class").

37.     Plaintiffs reserve the right to modify the definition of the Class or any appropriate Sub-Class upon completion of discovery addressed to Class certification.

38.     The exact number of Class members is unknown as such information is in the exclusive control of Defendants. Plaintiffs, however, believe that the Class and Sub-Classes each encompass thousands of individuals dispersed throughout the nation.  Therefore, the number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

39.     Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendants complained of herein were generally applicable to the entire Class.

40.     These legal and factual questions include, but are not limited to:

a. The nature, scope and operations of Defendants' wrongful practices;

b. Whether Defendants engaged in fraudulent practices as to the Class members;

c. Whether Defendants' conduct amounts to violations of various state consumer protection laws;

d. Whether Defendants breached their contracts with RushCard customers;

e. Whether Defendants breached their fiduciary duties to RushCard customers;

CLASS ACTION COMPLAINT

f. Whether Defendants were negligent;

g. Whether Defendants have been unjustly enriched;

h. Whether Defendants unlawfully converted Plaintiffs' and Class members' monies;

i. Whether Plaintiffs and the Class suffered damages as a result of Defendants' misconduct as described herein and, if so, the proper measure of damages.

41.     Plaintiffs' claims are typical of the Class members because Plaintiffs and Class members were injured by the same wrongful practices of Defendants as described in this Complaint. Plaintiffs' claims arise from the same practices and course of conduct that gives rise to the claims of all Class members, and are based on the same legal theories.

42.     Questions of law or fact common to Class members predominate and a class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by Class members are likely to be in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are, as a general matter, too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting separate claims is remote and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials on the same factual issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action and certification of the Class under Rule 23(b)(3) is proper.

43.     Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent.

44.     Defendants have acted or refused to act on grounds generally applicable to all members of the Class, thereby making appropriate final injunctive relief or corresponding

CLASS ACTION COMPLAINT

1   declaratory relief with regard to Class members as a whole and certification of the Class under

2   Rule 23(b)(2) proper.

### COUNT I

### BREACH OF CONTRACT

*(On behalf of the Class)*

6   45.   Plaintiffs re-allege and incorporate by reference the allegations contained in all

7   preceding paragraphs as though set forth fully herein.

8   46.   Plaintiffs and Class members entered into contracts with Defendants pursuant to

9   which Defendants were to provide Plaintiffs and the Class with prepaid debit card services which

10  would allow customers to deposit money, withdraw cash, make purchases, shop online, pay bills,

11  and generally conduct transactions as one would with a debit card in exchange for a monthly fee.

12  47.   The terms of the contract include the assurances made by Defendants through

13  their advertising materials and statements, which constitute express warranties, and became part

14  of the basis of the bargain, that Plaintiffs' funds were safe and protected.

15  48.   Defendants breached its contractual obligations (1) by failing to safeguard

16  Plaintiffs' funds, (2) by denying Plaintiffs' access to their funds, thus failing to provide Plaintiffs

17  with the agreed upon services they bargained for, as described above.

18  49.   Plaintiffs, on behalf of themselves and all others similarly situated, demand

19  judgment against Defendants for damages in an amount to be proven at trial.

### COUNT II

### BREACH OF FIDUCIARY DUTY

*(On behalf of the Class)*

23  50.   Plaintiffs re-allege and incorporate by reference the allegations contained in all

24  preceding paragraphs as though set forth fully herein.

25  51.   Defendants owe fiduciary duties to Plaintiffs and Class members to preserve and

26  safeguard their money.

27  52.   Defendants breached their fiduciary duties by, among other things, unlawfully

28  denying Plaintiffs and Class members access to their funds.

53.     Defendants breached their fiduciary duties by failing to safeguard Plaintiffs monies.

54.     Plaintiffs and Class members have been damaged by Defendants' breach of their fiduciary duties.

55.     Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants for damages in an amount to be proven at trial.

<u>**COUNT III**</u>

<u>**NEGLIGENT MISREPRESENTATION**</u>

***(On behalf of the Class)***

56.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

57.     Under the circumstances alleged, Defendants owed a duty to Plaintiffs and Class members to provide them with safe and reliable debit card services as promised.

58.     Defendants falsely represented to Plaintiffs and Class members that, if they enrolled with RushCard they would have a safe and protected way to manage their money.

59.     Such representations were false, negligent and material.

60.     Defendants negligently made these representations with the understanding that Plaintiffs and Class members would rely upon them.

61.     Plaintiffs and Class members did in fact reasonably rely upon these misrepresentations made by Defendants.

62.     As a direct and proximate result of Defendant's negligent actions, Plaintiffs and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

63.     Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants for damages in an amount to be proven at trial.

**COUNT IV**

**CONVERSION**

***(On behalf of the Class)***

64.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

65.     At all times relevant, Plaintiffs and Class members utilized the RushCard to deposit and manage their personal funds, which they had a right to access and use at all times.

66.     Defendants knowingly and intentionally exercised dominion and control over Plaintiffs monies and denied them access to their funds.

67.     Because of the unlawful restriction on Plaintiffs' RushCard accounts, they were unable to use their money as they needed to.

68.     As a direct and proximate result of Defendants' wrongful conduct and conversion, Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

**COUNT V**

**UNJUST ENRICHMENT**

***(On behalf of the Class)***

69.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

70.     Plaintiffs and the Class have conferred substantial benefits on Defendants by paying a monthly fee for the use of the RushCard, and Defendants have consciously and willingly accepted and enjoyed these benefits.

71.     Defendants knew or should have known that consumers' payments were given and received with the expectation that consumers would be using a safe and reliable prepaid debit card service, as falsely represented by the Defendants.

72.     Because of the deliberate fraudulent misrepresentations, and other wrongful activities described above, including but not limited to, inducing consumers to enroll with RushCard with false and misleading representations of safe and reliable services, Defendants have been unjustly enriched by its wrongful receipt of Plaintiffs and Class members' monies.

73.     As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

74.     Defendants should be required to disgorge all monies, profits and gains which it has obtained or will unjustly obtain in the future at the expense of consumers.

<u>**COUNT VI**</u>

<u>**FRAUD**</u>

***(On behalf of the Class)***

75.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

76.     Defendants made false and fraudulent representations of material fact to Plaintiffs and Class members regarded the purported safety and benefits of using RushCard prepaid debit card services.

77.     Among those representations, Defendants, through its website and marketing materials, fraudulently misrepresented to consumers that their funds were safe and protected, and that consumers would be able to utilize their RushCards anywhere Visa debit cards were accepted.

78.     Upon information and belief, Defendants knew that based on its business model, as described above, its RushCard services were not safe and protected as promise, a material fact that Defendants failed to disclose to Plaintiffs and Class members.

79.     Defendants' misrepresentations and concealments of material facts concerning the safety of RushCards were made purposefully, willfully, wantonly, and recklessly to induce Plaintiffs and Class members to use RushCard services.

80.     At the time Defendants made these misrepresentations and concealments, and at the time Plaintiffs and other consumers enrolled with RushCard, the Plaintiffs and consumers were unaware of the falsity of these representations, and reasonably believed them to be true.

81.     In making these representations or failing to disclose material facts, Defendants knew they were false and intended that the Plaintiffs and Class members would rely upon such misrepresentations.

82.     Plaintiffs and Class members did in fact rely upon such misrepresentations of Defendants'.

83.     Plaintiffs and Class members reliance was reasonable as they trusted the Defendants would act honestly and in good faith.

84.     As a direct and proximate result of Defendants' deceptive, fraudulent, and unfair practices, Plaintiffs and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

## COUNT VII

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

## CAL.BUS. & PROF. CODE §§ 17500, *et seq.*

### *(On behalf of the California Sub-Class)*

85.     Plaintiff Huff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

86.     California's False Advertising Law ("FAL") prohibits the dissemination of false or misleading statements before the public.

87.     During the Class Period, Defendants marketed, advertised and represented to the public prepaid debit card services in exchange for money.

88.     Defendants' marketing, advertising and representations regarding its services are false, misleading and deceptive.

89.     Defendants entice potential customers, including Plaintiff Huff and California Sub-Class members, with the promise of safe and reliable accounts to store and manage their money.

90.     At the time Defendants made and disseminated the statements alleged herein, Defendants knew or should have known the statements were untrue, deceptive, or misleading, and therefore it acted in violation of the FAL.

91.     Defendants' acts of untrue and misleading advertising present a continuing threat to customers because such advertisements induced consumers to contract for its services, which are operated under false pretenses.

92.     As a result of the violations of California law described above, Defendants have been and will continue to be unjustly enriched at the expense of Plaintiff Huff, the California Sub-Class members and of the general public. Specifically, Defendants have been unjustly enriched by receipt of substantial sums of money received from customers pursuant to material misrepresentations regarding Defendants' services.

93.     As a result of the violations of California law described above, Plaintiffs and Sub-Class Members have suffered injury-in-fact and have lost money or property.

94.     Plaintiff Huff, individually and on behalf of the California Sub-Class, demands restitution, injunctive relief and all other relief available under the FAL.

### COUNT VIII

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

### CAL. BUS. & PROF. CODE § 17200, *et seq.*

### ("unfair" and "fraudulent" elements)

### *(On Behalf of the California Sub-Class)*

95.     Plaintiff Huff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

96.     California's Unfair Competition Law ("UCL") prohibits "unfair competition" which includes "unfair", "unlawful" and "fraudulent" business practices.

97.     Defendants engaged in unfair, unlawful, and fraudulent business practices by knowingly and intentionally soliciting and promoting misleading representations regarding safe and protected prepaid debit card services to consumers.

98.     Defendants engaged in unfair, unlawful, and fraudulent business practices by unlawfully denying Plaintiff Huff and California Sub-Class members access to their accounts and funds.

99.     Defendants engaged in unfair and fraudulent business practices by failing to protect and secure customer accounts.

100.    Defendants' acts and practices were false, misleading, deceptive, and unfair to consumers, in violation of the UCL.

101.    Plaintiff Huff and California Sub-Class members relied on Defendants' representations of material facts. Had Defendants disclosed to Class Members in their marketing and sales promotional materials or otherwise that their prepaid debit card services were not safe and protected, and that Plaintiffs would not have access to their funds for long periods of times, class members would not have enrolled with RushCard.

102.    As a direct and proximate result of Defendants' deceptive, fraudulent, and unfair practices, Plaintiffs and members of the Class have suffered injury in fact and/or actual damages in an amount to be determined at trial.

103.    Plaintiff Huff, on behalf of herself and all others similarly situated, demands judgment against the Defendants for damages in an amount to be determined at trial.

## COUNT IX

## VIOLATION OF CAL. CIV. CODE §§ 1709, 1710

### (Deceit by Concealment)

### (*On Behalf of the California Sub-Class*)

104.    Plaintiff Huff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

105.    Defendants made material representations and omissions to the general public including Plaintiff Huff and the California Sub-Class about RushCard's safety and reliability that were false and misleading.

106.    Defendants knew that their representations regarding the safety and reliability of RushCard accounts were untrue. Defendants made these false representations with the intent to induce Plaintiff Huff and California-Sub-Class members to act in reliance thereon.

107.    Defendants willfully deceived Plaintiffs and Class Members by concealing the true nature of RushCards. Defendants knew in advance of Plaintiffs' enrollments with RushCard, that Plaintiffs accounts were not secure and protected as promised.

108.    Plaintiff Huff and California Sub-Class reasonably believed Defendants' representations were true, and in reliance on those representations, enrolled with RushCard.

109.    Plaintiff Huff would not have enrolled with RushCard had she known that its prepaid debit card services were not safe and protected, and that she would not have access to her funds for long periods of time.

110.    As a direct and proximate result of the foregoing acts, omissions, Plaintiff Huff and California Sub-Class Members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

<u>**COUNT X**</u>

<u>**VIOLATION OF VIRGINIA'S FALSE ADVERTISING STATUTE**</u>

<u>**Va. Code Ann. §18-2-216 *et seq.***</u>

***(On behalf of the Virginia Sub-Class)***

111.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

112.    Virginia's False Advertising Statute prohibits the dissemination of false or misleading statement s before the public. Va. Code Ann. §18.2-216.

113.    During the Class Period, Defendants marketed, advertised and represented to the public prepaid debit card services in exchange for money.

114.    Defendant's marketing, advertising and representations regarding its services are false, misleading and deceptive.

115.    Defendants entice potential customers, including Plaintiffs and Class members, with the promise of safe and reliable accounts to store and manage their money.

116.    At the time Defendants made and disseminated the statements alleged herein, Defendants knew or should have known the statements were untrue, deceptive, or misleading, and therefore it acted in violation of Virginia's False Advertising Statute.

CLASS ACTION COMPLAINT

117.    Defendants' acts of untrue and misleading advertising present a continuing threat to customers because such advertisements induced consumers to contract for its services, which are operated under false pretenses.

118.    As a result of the violations of California law described above, Defendants have been and will continue to be unjustly enriched at the expense of Plaintiffs, the Class and members of the general public. Specifically, Defendants have been unjustly enriched by receipt of substantial sums of money received from customers pursuant to material misrepresentations regarding Defendants' services.

119.    As a result of the violations of Virginia law described above, Plaintiffs and Sub-Class Members have suffered injury-in-fact and have lost money or property.

120.    Plaintiffs, individually and on behalf of the Virginia Sub-Class, demand restitution, injunctive relief and all other relief available under Va. Code Ann. §59.1-68.5.

### COUNT XII

### VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT

### Va. Code Ann §59.1-196 *et seq.*

### *(On behalf of the Virginia Sub-Class)*

121.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

122.    Plaintiffs Golden and Little assert this Count on behalf of themselves and the other members of the Virginia Sub-class.

123.    This Count is brought pursuant to Virginia's Consumer Protection Act of 1977, Va. Code Ann. §59.1-196 *et seq.*, ("VCPA").

124.    The VCPA declares unlawful deceptive and unfair trade practices such as, making false or misleading statements and other representations that have the capacity, tendency, or effect of deceiving or misleading consumers, failing to state material facts where the failure deceives or tends to deceive consumers, and engaging in deception, misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that consumers rely on the same in connection with the promotion and sale of consumer goods or services.

125.    Under the VCPA, Defendants' misleading representations regarding the true nature of its RushCard accounts are unfair, deceptive and unconscionable.

126.    In the course of soliciting and promoting RushCard's purported safe and reliable debit card services, and in entering into agreements with consumers to provide such purported services, Defendants have engaged in fraudulent acts and practices in violations of the VCPA.

127.    Defendants further violated the VCPA by unlawfully denying Plaintiffs access to their accounts.

128.    Defendants' acts and practices as alleged in the foregoing paragraphs were false, misleading, deceptive, and unfair to consumers, in violation of the VCPA.

129.    Plaintiffs would not have enrolled with RushCard had they known that its prepaid debit card services were not safe and protected, and that Plaintiffs would not have access to their funds for long periods of time.

130.    As a direct and proximate result of Defendants' wrongful conduct and violations of the VCPA, Plaintiff and Sub-Class members have suffered damages in an amount to be determined at trial.

**COUNT XIII**

**VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES & CONSUMER PROTECTION ACT**

**Tex.Bus. & Com.Code §§ 17.41, *et seq.***

131.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

132.    Plaintiff Jackie Brown asserts this Count on behalf of himself and the other members of the Texas Sub-Class.

133.    This Count is brought pursuant to Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 *et seq*. ("DTPA").

134.    The DTPA declares unlawful deceptive and unfair trade practices such as, making false or misleading statements and other representations that have the capacity, tendency, or effect of deceiving or misleading consumers, failing to state material facts where the failure

1    deceives or tends to deceive consumers, and engaging in deception, misrepresentation, or

2    knowing concealment, suppression, or omission of material facts with the intent that consumers

3    rely on the same in connection with the promotion and sale of consumer goods or services.

4         135.    Under the DTPA, Defendants' misleading representations regarding the true

5    nature of its RushCard accounts are unfair, deceptive and unconscionable.

6         136.    In the course of soliciting and promoting RushCard's purported safe and reliable

7    debit card services, and in entering into agreements with consumers to provide such purported

8    services, Defendants have engaged in fraudulent acts and practices in violations of the DTPA.

9         137.    Defendants further violated the DTPA by unlawfully denying Plaintiffs access to

10   their accounts.

11        138.    Defendants' acts and practices as alleged in the foregoing paragraphs were false,

12   misleading, deceptive, and unfair to consumers, in violation of the DTPA.

13        139.    Plaintiff Brown would not have enrolled with RushCard had they known that its

14   prepaid debit card services were not safe and protected, and that Plaintiffs would not have access

15   to their funds for long periods of time.

16        140.    As a direct and proximate result of Defendants' wrongful conduct and violations

17   of the DTPA, Plaintiff Brown and Sub-Class members have suffered damages in an amount to be

18   determined at trial.

19   **COUNT XIV**

20   **VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES**

21   **ACT**

22   **815 ILCS 505/1 *et seq.***

23   ***(On behalf of the Illinois Sub-Class)***

24        141.    Plaintiffs re-allege and incorporate by reference the allegations contained in all

25   preceding paragraphs as though set forth fully herein.

26        142.    Plaintiff Walton asserts this Count on behalf of herself and the other members of

27   the Illinois Sub-Class.

28

143.     This Count is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILC 505/2 ("CFA").

144.     The CFA declares unlawful deceptive and unfair trade practices such as, making false or misleading statements and other representations that have the capacity, tendency, or effect of deceiving or misleading consumers, failing to state material facts where the failure deceives or tends to deceive consumers, and engaging in deception, misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that consumers rely on the same in connection with the promotion and sale of consumer goods or services.

145.     Under the CFA, Defendants' misleading representations regarding the true nature of its RushCard accounts are unfair, deceptive and unconscionable.

146.     In the course of soliciting and promoting RushCard's purported safe and reliable debit card services, and in entering into agreements with consumers to provide such purported services, Defendants have engaged in fraudulent acts and practices in violations of the CFA.

147.     Defendants further violated the CFA by unlawfully denying Plaintiffs access to their accounts.

148.     Defendants' acts and practices as alleged in the foregoing paragraphs were false, misleading, deceptive, and unfair to consumers, in violation of the CFA.

149.     Plaintiff Walton would not have enrolled with RushCard had they known that its prepaid debit card services were not safe and protected, and that she would not have access to their funds for long periods of time.

150.     As a direct and proximate result of Defendants' wrongful conduct and violations of the CFA, Plaintiff Walton and Sub-Class members have suffered damages in an amount to be determined at trial.

## COUNT XV

## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### Pa. Code §201-1, *et seq.*

*(On behalf of the Pennsylvania Class)*

CLASS ACTION COMPLAINT

151.   Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

152.   Plaintiff Collier asserts this Count on behalf of himself/herself and the other members of the Pennsylvania Sub-Class.

153.   This Count is brought pursuant to the Pennsylvania Unfair Trade practices and Consumer Protection Law, 73 Pa. Stat. §201 *et seq.* ("UTPCPL").

154.   The UTPCPL declares unlawful deceptive and unfair trade practices such as, making false or misleading statements and other representations that have the capacity, tendency, or effect of deceiving or misleading consumers, failing to state material facts where the failure deceives or tends to deceive consumers, and engaging in deception, misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that consumers rely on the same in connection with the promotion and sale of consumer goods or services.

155.   Under the UTPCPL, Defendants' misleading representations regarding the true nature of its RushCard accounts are unfair, deceptive and unconscionable.

156.   In the course of soliciting and promoting RushCard's purported safe and reliable debit card services, and in entering into agreements with consumers to provide such purported services, Defendants have engaged in fraudulent acts and practices in violations of the UTPCPL.

157.   Defendants further violated the UTPCPL by unlawfully denying Plaintiffs access to their accounts.

158.   Defendants' acts and practices as alleged in the foregoing paragraphs were false, misleading, deceptive, and unfair to consumers, in violation of the UTPCPL.

159.   Plaintiff Collier would not have enrolled with RushCard had they known that its prepaid debit card services were not safe and protected, and that she would not have access to their funds for long periods of time.

160.   As a direct and proximate result of Defendants' wrongful conduct and violations of the UTPCPL, Plaintiff and Sub-Class members have suffered damages in an amount to be determined at trial.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT XVI**

**VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT**

**Md.Code, Com.Law § 13-101 *et seq*.**

*(On behalf of the Maryland Sub-Class)*

161.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

162.     Plaintiff Patterson asserts this Count on behalf of himself and the other members of the Maryland Sub-Class.

163.     This Count is brought pursuant to Maryland's Consumer Protection Act, Md.Code, Com.Law § 13-101 *et seq*. ("MCPA").

164.     The MCPA declares unlawful deceptive and unfair trade practices such as, making false or misleading statements and other representations that have the capacity, tendency, or effect of deceiving or misleading consumers, failing to state material facts where the failure deceives or tends to deceive consumers, and engaging in deception, misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that consumers rely on the same in connection with the promotion and sale of consumer goods or services.

165.     Under the MCPA, Defendants' misleading representations regarding the true nature of its RushCard accounts are unfair, deceptive and unconscionable.

166.     In the course of soliciting and promoting RushCard's purported safe and reliable debit card services, and in entering into agreements with consumers to provide such purported services, Defendants have engaged in fraudulent acts and practices in violations of the MCPA.

167.     Defendants further violated the MCPA by unlawfully denying Plaintiffs access to their accounts.

168.     Defendants' acts and practices as alleged in the foregoing paragraphs were false, misleading, deceptive, and unfair to consumers, in violation of the MCPA.

169.     Plaintiff Patterson would not have enrolled with RushCard had they known that its prepaid debit card services were not safe and protected, and that he would not have access to their funds for long periods of time.

CLASS ACTION COMPLAINT

170.     As a direct and proximate result of Defendants' wrongful conduct and violations of the MCPA, Plaintiff Patterson and Sub-Class members have suffered damages in an amount to be determined at trial.

<u>**COUNT XVII**</u>

<u>**VIOLATION OF NORTH CAROLINA UNFAIR & DECEPTIVE TRADE PRACTICES ACT**</u>

**<u>N.C. Gen. Stat. §75-1.1 *et seq.*</u>**

***(On behalf of the North Carolina Sub-Class)***

171.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

172.     Plaintiff Townsend asserts this Count on behalf of himself and the other members of the North Carolina Sub-Class.

173.     This cause of action is brought pursuant to North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat, §75.1, *et seq.* ("UDTPA").

174.     The UDTPA declares unlawful deceptive and unfair trade practices such as, making false or misleading statements and other representations that have the capacity, tendency, or effect of deceiving or misleading consumers, failing to state material facts where the failure deceives or tends to deceive consumers, and engaging in deception, misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that consumers rely on the same in connection with the promotion and sale of consumer goods or services.

175.     Under the UDTPA, Defendants' misleading representations regarding the true nature of its RushCard accounts are unfair, deceptive and unconscionable.

176.     In the course of soliciting and promoting RushCard's purported safe and reliable debit card services, and in entering into agreements with consumers to provide such purported services, Defendants have engaged in fraudulent acts and practices in violations of the UDTPA.

177.     Defendants further violated the UDTPA by unlawfully denying Plaintiffs access to their accounts.

CLASS ACTION COMPLAINT

178.     Defendants' acts and practices as alleged in the foregoing paragraphs were false, misleading, deceptive, and unfair to consumers, in violation of the UDTPA.

179.     Plaintiff Townsend would not have enrolled with RushCard had they known that its prepaid debit card services were not safe and protected, and that he would not have access to their funds for long periods of time.

180.     As a direct and proximate result of Defendants' wrongful conduct and violations of the UDTPA, Plaintiff Townsend and Sub-Class members have suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for a judgment to be entered upon Defendants as follows:

A.   Appointing Plaintiffs as the representative of the Class and their counsel as Class counsel;

B.   For economic and compensatory damages on behalf of Plaintiffs and all Class members;

C.   For actual damages sustained;

D.   For treble damages pursuant to law, and all other actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

E.   For injunctive relief, compelling Defendant to cease their unlawful actions and to account to Plaintiffs for their unjust enrichment;

F.   For reasonable attorneys' fees, reimbursement of all costs for the prosecution of this action, and pre-judgment and post-judgment interest; and

G.   For such other and further relief this Court deems just and appropriate.

H.

## **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand a trial by jury on all issues within the instant action so triable.

CLASS ACTION COMPLAINT

Dated this October 30, 2015                          AUDET & PARTNERS, LLP


                                                     /s/
                                                     Michael McShane
                                                     mmcshane@audetlaw.com
                                                     Jonas P. Mann
                                                     jmann@audetlaw.com
                                                     711 Van Ness Ave., Ste. 500
                                                     San Francisco, CA 94102
                                                     T: 415.568.2555

                                                     Charles J. LaDuca
                                                     charles@cuneolaw.com
                                                     Beatrice Yakubu
                                                     byakubu@cuneolaw.com
                                                     Cuneo Gilbert & LaDuca, LLP
                                                     8120 Woodmont Ave., Ste. 810
                                                     Bethesda, MD 20814
                                                     T: 202.789.3960

                                                     Erica C. Mirabella
                                                     erica@mirabellallc.com
                                                     Mirabella Law, LLC
                                                     132 Boylston St., 5th Fl.
                                                     Boston, MA 02116
                                                     T: 617.580.8270

                                                     *Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT